FILED

2014 Feb-18  PM 02:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| ORLANDO WILLIAMS, | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| v. | ] | **4:12-cv-4043-KOB** |
| | ] | |
| ALABAMA DEPARTMENT OF | ] | |
| CORRECTIONS, et al., | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION

This matter is before the court on "Plaintiff Orlando V. Williams Motion for Summary

Judgment and Supporting Brief" (doc. 97) and Defendants' Cross Motion for Summary Judgment

(doc. 101). Mr. Williams brings suit *pro se* under Title VII, the Americans with Disabilities Act

(ADA), and 42 U.S.C. § 1983, claiming that he was discriminated against on the basis of his race

and disability and retaliated against by Defendants. Mr. Williams filed his motion for summary

judgment, arguing that he has proven each element of each of his claims. Defendants filed a cross

motion for summary judgment, arguing that some of Mr. Williams's claims are time-barred, that

Counts I, II, and III cannot be applied to the individual Defendants, and that Mr. Williams fails to

show a prima facie case as to each of his counts.

For the following reasons, the court will DENY the Plaintiff's motion for summary

judgment. The court will GRANT the Defendants' cross motion for summary judgment IN PART,

and ENTER SUMMARY JUDGMENT as to only the disparate treatment claim in Count I, as well

as the entirety of Counts II, III, IV, V, and VI. The court will DENY Defendants' cross motion IN

1

PART as to the failure to accommodate claim in Count I.

## I.   STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). The moving party need not present evidence in a form admissible at trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324.  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).  The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).  "Even if a district court 'believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.'" *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)  (citing *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006)). The court

should not disregard self-serving statements made in sworn testimony simply because they are self-serving at the summary judgment stage, and if the self-serving statements create a genuine issue of material fact, the court should deny summary judgment on that basis. *Id.* at 1253.

The applicable Rule 56 standard is not affected by the filing of cross motions for summary judgment. *See, e.g., United States v. Oakley*, 744 F.2d 1553, at 1555-56 (11th Cir. 1984). When parties file cross motions for summary judgment, "each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law." *Busby v. JRHBW Realty, Inc.*, 642 F. Supp. 2d 1283, 1288 (N.D. Ala. 2009). "The fact that both parties simultaneously are arguing that there is no genuine issue of fact . . . does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *Id.* (internal quotation marks omitted). The Eleventh Circuit has noted that "[c]ross motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Oakley*, 744 F.2d at 1555. Nevertheless, "cross-motions may be probative of the non-existence of a factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Id.* at 1555-56.

## II.   PROCEDURAL HISTORY

On January 5, 2011, *pro se* Plaintiff Orlando V. Williams filed an EEOC Charge of Discrimination against the St. Clair County Correctional Facility, alleging discrimination based on race, disability, and retaliation. (Doc. 37, Exhibit A). On November 15, 2012, the EEOC issued Mr. Williams a right to sue letter.

On December 7, 2012, Mr. Williams filed this *pro se* suit against the Alabama Department

of Corrections; Carter F. Davenport, Warden of St. Clair Correctional Facility; Kimberley Weary, Departmental Grievance Officer; and James Marsh, Sergeant. (Doc. 1). On February 4, 2012, Mr. Williams added Robert Simmons, Correctional Captain, and William Northcutt, Correctional Lieutenant, as defendants. Mr. Williams's Second Amended Complaint alleges Count I for disparate treatment disability discrimination under the ADA, Count II for disparate treatment race discrimination under Title VII, Count III for disparate treatment retaliation under the ADA, Count IV for disability discrimination under 42 U.S.C. § 1983, Count V for race discrimination under 42 U.S.C. § 1983, and Count VI for retaliation under 42 U.S.C. § 1983.

On October 7, 2013, Mr. Williams filed a Motion for Judgment on the Pleadings. (Doc. 94). Because the motion included evidentiary exhibits that were not part of the pleadings, the court entered an Order declaring that it would treat the motion as a motion for summary judgment but requiring Mr. Williams to submit a statement of undisputed relevant material facts. Because Mr. Williams is a *pro se* plaintiff, the court's Order also included Appendix II with specific instructions on motions for summary judgment and a notice and explanation of Rule 56. (Doc. 95).

Rather than filing a supplemental statement of undisputed facts, on October 11, 2013, Mr. Williams instead filed an entirely separate Motion for Summary Judgment. (Doc. 97). In light of the new motion, the court ruled the previous Motion for Judgment on the Pleadings moot and entered a briefing schedule on the Motion for Summary Judgment (doc. 98), again explaining the summary judgment process under Rule 56 and complying with *McBride v. Sharpe.* 981 F.2d 1234, 1236 (11th Cir. 1993).

On November 7, 2013, Defendants filed one document that included both their response to Mr. Williams's motion for summary judgment and a separate Cross Motion for Summary Judgment.

4

(Doc. 101). Defendants' response stated that all but one of Mr. Williams "uncontested facts" are "highly contested by the Defendants" and the cross motion offered its own set of "undisputed facts." (Doc. 101, at 3, 9). Mr. Williams reply/response to the cross motion went through each of his claims, stating whether he agreed or disagreed with Defendants' recitation of the legal elements, and citing to the Exhibits from his Second Amended Complaint to support each element. (Doc. 103).

Mr. Williams, in his response to the cross motion for summary judgment, did not comply with the requirement that "[t]he non-moving party's response to the moving party's claimed undisputed facts shall be in *separately numbered paragraphs* that coincide with those of the moving party's claimed undisputed facts" and include "a specific reference to those portions of the evidentiary record upon which [any] dispute is based." (Appendix II, at 5). According to Appendix II, "[a]*ll material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment*." (Appendix II, at 5). As such, the court could accept Defendants' version of undisputed facts in support of their motion for summary judgment. However, because Mr. Williams is *pro se*, the court has compared Defendants' statement of undisputed facts with the exhibits Mr. Williams presented in both his motion for summary judgment (doc. 97) and his Second Amended Complaint (doc. 37).

## III.   DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

For ease of analysis, the court will first examine Defendants' cross motion for summary judgment, setting out the facts in the light most favorable to the Plaintiff and considering him the non-movant. After completing this analysis, the court will then address Plaintiff's motion for summary judgment for any remaining claims.

### A.     Factual History

For purposes of the cross motion for summary judgment, the court considers the facts, viewed in the light most favorable to the Plaintiff, to be all facts from Defendants' motion that are properly supported by a specific reference to the evidentiary record (as required by Appendix II, at 4) and are not called into question by any part of Mr. Williams's evidentiary submissions, along with the other portions of Mr. Williams's evidentiary submissions that support his claims. The court also considers the one uncontested fact from Mr. Williams's original motion.

Plaintiff, Orlando V. Williams, began his employment with the Alabama Department of Corrections ("ADOC") in June 2005. During the time period in dispute, he worked in the St. Clair Correctional Facility as a Correctional Officer. (Doc. 37, Exhibit A). Mr. Williams received warnings for failing to utilize proper call-in procedures concerning leave on April 19, 2006, September 28, 2007, and May 7, 2008. (Doc. 101, Exhibits A, B, and C).

On May 18, 2008, Mr. Williams called the St. Clair Correctional facility to advise that he would be late for work, stating that he had just woken up. "The Sergeant" advised Mr. Williams that he was "in violation of Administrative Regulation 208." Mr. Williams waived his due process disciplinary hearing and on November 26, 2008, Commissioner Richard F. Allen informed Mr. Williams that he was being suspended without pay for two days. (Doc. 101, Exhibit D).

On September 12, 2008, Mr. Williams sent a memorandum to Associate Commissioner, James DeLoach. The memo and its attachments detailed Mr. Williams's complaint of harassment, discriminatory treatment, and hostile work environment, and named Wardens Carter and Burrell and Sergeant Mason. Mr. Williams's complaints surrounded his shift assignments by "a white Sgt. John Mason" and disputes over his shaving profile. (Doc. 101, Exhibit E).

6

In October 2008, the St. Clair Correctional Facility implemented a 12-hour schedule for security shifts. (Doc. 37, Exhibit V).

On August 24, 2009, Mr. Williams submitted a "Harassment and Discrimination Complaint Form," complaining of his treatment by Warden Wade Kizzire, who had reprimanded Mr. Williams via memorandum for "agitating inmates on suicide watch." Mr. Williams alleged that he was being falsely accused. (Doc. 101, Exhibit F).

On November 13 and 14, 2009, Mr. Williams failed to report to work as scheduled and failed to follow proper call-in procedures. Following a hearing, Commissioner Allen suspended Mr. Williams for two days on the recommendation of Warden David J. Wise. Commissioner Allen informed Mr. Williams of the suspension via letter on August 19, 2010. (Doc. 101, Exhibit G).

On May 5, 2010, Mr. Williams received a written reprimand for allegedly engaging in "disagreeable behavior, lack of cooperation and subordination toward Sgt. Luke Harris while he was attempting to question you about an invalid doctors excuse, via the telephone." According to the reprimand, Mr. Williams "hung up twice on Sgt. Harris during the conversations, the last time stating 'Man, I ain't got nothing to say to you. Stop calling me.'" (Doc. 101, Exhibit H). On June 1, 2010, Mr. Williams filed a "Harassment and Discrimination Complaint Form" concerning the incident with Sergeant Harris, asserting that Sergeant Harris was "verbally hostile" and issued the reprimand in retaliation for Mr. Williams's complaints against Warden Kizzire, who was a friend of Sergeant Harris. (Doc. 101, Exhibit I).

On June 8, 2010, Mr. Williams filed another "Harassment and Discrimination Complaint Form," this time against Warden David J. Wise, alleging that Warden Wise had improperly handled a number of disciplinary situations. Specifically, Mr. Williams said that Warden Wise denied

receiving Mr. Williams's rebuttal to the May 5, 2010 reprimand and that Warden Wise

unnecessarily issued reprimands in several instances. (Doc. 101, Exhibit J).

On November 3, 2010, Mr. Williams submitted an "Employee Grievance," stating that on

November 2, 2013, he was informed that Warden Davenport had put him up for dismissal and kept

him on 12-hour shifts. According to Mr. Williams, "I feel discriminated on due to the fact of being

put under Dr's care and issued an 8 hour work profile." He claimed he had used proper call in

procedures and informed his supervisor on October 29, 2010 that he would miss the next three days

of work due to his illness, but that "Warden Davenport and my supervisor have altered my

Supervisor's Memorandum of Employee Call-In Sheet in Retaliation because I'm not able to work

12 hour shift at St. Clair Correctional Facility." Mr. Williams also stated that he had "submitted

papers" to the EEOC. (Doc. 101, Exhibit L).

Mr. Williams's Physician Questionnaire, dated October 29, 2010, was attached to his

November 3, 2010 Employee Grievance. It states: "As able patient would benefit from having shift

limited to eight hours" and notes that it is "unclear" whether the impairment is permanent or

temporary. The doctor marked "yes" next to all of the functions on the Essential Function Work

Checklist for Correctional Officers and affirmed that Mr. Williams could "perform the duties listed

without posing a direct threat to [his] health or safety or to that of others." (Doc. 101, Exhibit N).

According to Mr. Williams, on November 2, 2010, Warden Davenport replied to Mr.

Williams's grievance by sending him a memorandum that stated:

> I have reviewed the Physician's Questionnaire and Essential Function Checklist you
> submitted. I am unable to accommodate the work restriction of being assigned to an
> eight (8) hour shift.
>
> In accordance with the guidelines of Administrative Regulation 222 – Individuals

8

with Disabilities, since you are unable to perform the essential function of a
Correctional Officer during your assigned shift job reclassification may be in order.
If a vacant non-security position is not available ADOC may proceed with
termination of your employment.

(Doc. 37, Exhibit K).

On January 3, 2011, Mr. Williams called in at 2:40 p.m. to report that he would be two-hours

late for his 6:00 p.m. shift because of a doctor's appointment. When he arrived at work at 7:03 p.m.,

he did not bring a doctor's excuse as required. On January 21, 2011, Mr. Williams received a formal

warning for this incident.

On January 4, 2011, Mr. Williams filed another "Harassment and Discrimination Complaint

Form," alleging that Robert Simmons, Correctional Captain, had discriminated against him in his post

assignments. Mr. Williams stated: "If (sic) feel discriminated on because I am an African American

male and I cannot enhance familiarity of the post, cross train, etc. being assigned the same post

assignment for population unit(s) in having Cubicle(s)." (Doc. 101, Exhibit N).

On January 5, 2011, Mr. Williams filed the EEOC Complaint that is the basis for this action.

He alleged that he was discriminated against because of his race and disability and retaliated against

"for protesting discriminatory employment practices by management." (Doc. 101, Exhibit O).

From February 15, 2011 to May 22, 2011 Mr. Williams used his leave under the Family and

Medical Leave Act. Beginning on May 23, 2011, he had exhausted his FMLA leave and was out on

leave without pay. (Doc. 101, Exhibit Q). Mr. Williams's FMLA paperwork reflects that he was in

the hospital from March 10, 2011 to May 12, 2011. It shows that he had a chronic condition and

exhibited "symptoms of anxiety, depression, and insomnia." It states: "[Patient was prescribed]

[p]rescription medications to treat chronic condition which may cause sedation, dizziness, fatigue,

anxiety that may impact employee's ability to work more than 8 hour shifts." The attached

Physician Questionnaire also states that Mr. Williams's shifts should be limited to eight hours and

that he would be capable of returning to work on July 6, 2011. (Doc. 101, Exhibit R).

Apparently on receipt of this new information, Warden Davenport sent Mr. Williams a

letter, dated June 24, 2011, informing him that he had been assigned to Childersburg Work Release

effective July 1, 2011 and was to report to work there on July 6, 2011. (Doc. 101, Exhibit S). Less

than a week after beginning his new assignment, Mr. Williams failed to report to work at 6:00 a.m.

or to give any notice that he would be late. According to the memorandum to Mr. Williams, dated

July 22, 2011, he "did not contact the institution until 7:42 AM, at which time [he] informed a First

Shift Sergeant that [he] had overslept due to medication [he was] taking. The information that [he

was] taking medication that could cause [him] to oversleep was not provided prior to the incident

occurring. [He] did not report for work until 9:00 AM." The memo further outlined twelve of Mr.

Williams's previous disciplinary actions and inform him of a pre-dismissal conference scheduled for

August 22, 2011. The memo explained that the dismissal conference was an opportunity for Mr.

Williams to tell his side of the story and informed him that he could voluntarily resign in lieu of

dismissal, but would likely not be recommended for re-employment with the Department of

Corrections. (Doc. 101, Exhibit T).

On September 16, 2011, Mr. Williams submitted his resignation "due to [his] medical

profile." Warden Danford accepted the resignation. (Doc. 101, Exhibit U). On September 6, 2012,

Judge J. Scott Vowell of the Circuit Court of Jefferson County ruled on Mr. Williams's

unemployment compensation appeal, finding that he was disqualified from receiving benefits

because he voluntarily quit his employment and later filed a claim for Social Security Disability,

certifying that he was unable to work because of his disability. (Doc. 101, Exhibit V).

### B.    Discussion

Defendants' cross motion for summary judgment goes through the various claims, grouping them by the law under which they were brought. The court will proceed by addressing each of the counts in turn.

### i.    Counts I, II, and III Against the Individual Defendants

As a preliminary matter, the court addresses Defendants' argument that the individual Defendants cannot be sued under the ADA and Title VII. They are correct. No individual liability exists under either the ADA or Title VII; "only the employer, not individual employees, can be liable under" the ADA, as is the case with Title VII and the ADEA. *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996). Therefore, the court will GRANT Defendants' motion for summary judgment on Counts I, II, and III as to the individual Defendants Davenport, Weary, Marsh, Simmons, and Northcutt because they were not Plaintiff's employer.

### ii.    Count I: Disability Discrimination Under the ADA Against ADOC

Although Mr. Williams only explicitly makes a claim for disparate treatment in Count I, the facts in his Second Amended Complaint and the arguments he makes in his motion for summary judgment reveal that he is also making a claim for failure to reasonably accommodate him. (Doc. 37, at ¶ 18; Doc. 97). Because Mr. Williams is *pro se*, the court will liberally construe his complaint and examine both claims. Defendants are not prejudiced by this construction because the arguments in their motion for summary judgment address elements of both claims.

To establish a prima facie case of disability discrimination for either type of claim under the ADA, 42 U.S.C. § 12101 *et seq.*, Mr. Williams must show: "(1) he is disabled; (2) he is a qualified

individual; and (3) he was subjected to unlawful discrimination because of his disability." *Toland v. AT&T*, 489 Fed. App'x 318, 319 (11th Cir. 2012) (quoting *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255-56 (11th Cir. 2007)). Defendants claim that Mr. Williams cannot establish that he had a disability, that he put Defendants on notice of that disability, or that he suffered an adverse employment action because of his disability.

### a. Was Mr. Williams disabled?

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; *or* (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1) (emphasis added). Although ADOC raises valid arguments as to whether Mr. Williams can establish that he is actually disabled, the record shows a genuine dispute of fact as to whether the Alabama Department of Corrections *regarded* Mr. Williams as disabled.

Mr. Williams presents evidence that on November 12, 2010, Warden Davenport sent a memorandum to Mr. Williams, acknowledging receipt of the Physician's Questionnaire and Essential Function Checklist and informing him that the requested work restriction could not be accommodated. The memorandum went on to state: "In accordance with the guidelines of Administrative Regulation 222 - Individuals with Disabilities, since you are unable to perform the essential function of a Correctional Officer during your assigned shift job reclassification may be in order. If a vacant non-security position is not available ADOC may proceed with termination of your employment." (Doc. 37, Exhibit K). This document, specifically applying the disability guidelines to Mr. Williams, creates a genuine dispute of material fact as to whether Mr. Williams was regarded as disabled by ADOC beginning in November of 2010.

12

*b. Were the Defendants on notice of Mr. Williams' disability?*

Because the court finds a genuine dispute as to the "regarded as" element of disability, it need not further examine whether ADOC was on notice of the disability, at least as to the disparate treatment claim; if ADOC regarded Mr. Williams as disabled, it impliedly had notice of the alleged disability. Regardless of whether the information provided by Mr. Williams in November of 2010 would have been sufficient notice under other circumstances, Mr. Williams has at least provided some evidence to show that ADOC considered it sufficient notice at the time and regarded him as disabled.

To maintain a reasonable accommodation claim, however, an employee is required to not only notify his employer of his condition, but to also specifically request an accommodation. *See Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999). The November 12, 2010 memo to Mr. Williams, because it acknowledges the requested accommodation of an 8-hour shift, establishes that ADOC was on notice of Mr. Williams's requested accommodation.

*c. Did Mr. Williams suffer an adverse employment action because of his disability?*

The final argument raised by Defendant is that Mr. Williams cannot show that he suffered an adverse employment action because of his disability. An adverse employment action is a necessary element of his disparate treatment claim, although not a part of a failure to accommodate claim. *See Doe v. Dekalb County School Dist.*, 145 F.3d 1441, 1445 (11th Cir. 1998). Under the ADA, an employer may not "use the disability of an otherwise qualified person as an excuse for discrimination in hiring, promotion, discharge, compensation, training, or 'other terms, conditions, and

privileges of employment.'" *Id*. at 1447 (quoting 42 U.S.C. § 12112(a)).

Although Mr. Williams does not specifically delineate which actions he considers adverse and because of his disability, the court infers that he is protesting what he might consider a "forced resignation."[1] Although the complaint could be read to allege that ADOC's refusal to give him an eight-hour shift is the adverse action, the court is interpreting this allegation as a separate failure to accommodate claim, as noted previously.

In the Eleventh Circuit, employee resignations are presumed voluntary, unless the "employer forces the resignation by coercion or duress," or "the employer obtains the resignation by deceiving or misrepresenting a material fact to the employee." *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th 1995). In determining whether an employer forced a resignation through coercion or duress, a court should look at five guiding—though not dispositive—factors:

> (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel.

*Id*.

Applying the first factor to the undisputed facts in this case, Mr. Williams *did* have an alternative to resignation: he could have stood his ground with ADOC, even if it meant potential termination. Neither party has presented evidence showing whether the scheduled pre-dismissal

---

[1] Plaintiff could possibly make an argument that his various disciplinary actions were adverse employment actions because of a disability; however, he does *not* make this argument. While the court has broadly construed many portions of his complaint, because the many disciplinary actions are not the thrust of the complaint and their validity is for the most part undisputed, the court will not interpret the complaint as alleging the disciplinary actions as adverse employment actions.

conference actually took place and, if it did, what occurred at the conference; however, these facts are not necessary to the court's determination that Mr. Williams did have an alternative.

The Eleventh Circuit has held that "resignations can be voluntary even when the only alternative to resignation is facing possible termination for cause . . . ." *Id*. The Court explained: "Resignations obtained in cases where an employee is faced with such unpleasant alternatives are nevertheless voluntary because the fact remains that plaintiff *had a choice*. Plaintiff could stand pat and fight." *Id*. (internal quotations omitted) (emphasis in original). Mr. Williams has not presented any facts that call into question his ability to face termination and challenge it as such.

Second, Mr. Williams has not presented any facts to indicate that he did not understand the nature of the choice he was given. The July 22, 2011 memorandum outlined all of his infractions, notified him of his pre-dismissal conference, and informed him of the consequences of voluntarily resigning in lieu of dismissal. If Mr. Williams did not understand his choice, it was not because of ADOC's failure to explain.

Third, nearly two months passed between the July 22, 2011 memorandum informing Mr. Williams of his options and his September 16, 2011 resignation. The court considers this amount of time more than reasonable.

Fourth, the facts do not indicate whether Mr. Williams was permitted to select the effective date of his resignation. Once he submitted his resignation on September 16, 2011, it was presumably effective immediately. As already noted, however, Mr. Williams had nearly two months to consider his options and could have chosen an earlier date to resign, as opposed to September 16th.

Fifth, the facts do not indicate whether Mr. Williams had the advice of counsel. Again, however, with nearly two months to consider his options, Mr. Williams had plenty of time to consult

counsel if he so desired.

Overall, this court finds that the Eleventh Circuit factors point towards a conclusion that Mr. Williams's resignation was not obtained by coercion or duress. Furthermore, Mr. Williams makes no claim, and the facts do not indicate, that ADOC obtained his resignation by deceiving or misrepresenting a material fact to him. Because Mr. Williams has not presented facts to overcome the presumption that his resignation was voluntary, the court will not consider his resignation as an adverse employment action because of a disability.

In sum, because Mr. Williams has not alleged an adverse employment action because of a disability, the court will GRANT Defendants' motion for summary judgment as to the disparate treatment claim. The court finds, however, that genuine disputes of material fact exist as to Mr. Williams' failure to accommodate claim. Furthermore, this claim is not affected by the Defendants' argument that any claim occurring before March 12, 2010—Defendants' calculation of 300 days prior to the filing of the EEOC charge—should be time-barred, because Mr. Williams does not allege that the failure to accommodate began until he was denied an eight-hour shift in November 2010. As such, the failure to accommodate claim shall remain.

### iii.   Count II: Race Discrimination Under Title VII Against ADOC

Mr. Williams brings a claim for disparate treatment under Title VII, alleging that he was discriminated against because he is African-American. Where, as here, a plaintiff does not have direct evidence of racial discrimination, he must use circumstantial evidence. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004).

In *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established a framework for evaluating disparate treatment claims supported by circumstantial

evidence. *Id*. at 1087. Under the *McDonnell Douglas* framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." 411 U.S. at 802.   A plaintiff can establish a prima facie case of racial discrimination based on disparate treatment by showing that he belongs to a racial minority, he experienced an adverse job action, his employer treated similarly situated employees outside his classification more favorably, and he was qualified to do the job.  *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003).

In its cross motion for summary judgment, ADOC addresses Mr. Williams's complaint as if the adverse employment action he is alleging is his shift post assignment. Such an assumption is reasonable—particularly in light of the vagueness of Mr. Williams's arguments—because Mr. Williams submitted a grievance in early 2011, stating that he felt his supervisors were discriminating against him as an African-American male by giving him unfavorable post assignments. (Doc. 101, Exhibit N). If this claim is indeed what Mr. Williams is arguing, he has failed to establish a prima facie case because he has not submitted any evidence of any employees—similarly situated or not—who were treated more favorably in post assignment. Therefore, to the extent Mr. Williams is arguing that he was discriminated against by being given unfavorable post assignments, Defendants motion for summary judgment is due to be GRANTED.

As the court interprets Mr. Williams's argument from Count II of his complaint, he is alleging that he was discriminated against when Jackie Mashburn, a white male, was given an eight hour shift but Mr. Williams was not. Even assuming, for the sake of argument, that the refusal to move Mr. Williams to an eight-hour shift was an adverse employment action, the court finds that Mr. Williams has not presented evidence to show that Mr. Mashburn was a similarly situated

employee.

"To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that [he] and the employees are similarly situated in all relevant respects." *Hollifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). "Indeed, '[t]he comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer.'" *Embry v. Callahan Eye Found. Hosp.*, 147 Fed. Appx. 819, 829, 2005 WL 2009046, at *8 (11th Cir. 2005) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004)).

Here, although Mr. Williams has identified an alleged comparator, he has provided no evidence about Mr. Mashburn other than a time sheet showing that Mr. Mashburn worked from 6:00 a.m. to 2:00 p.m. at some point. It is not even clear whether the time sheet applies to one particular day or a longer period of time. (Doc. 37, Exhibit T). In his deposition, Mr. Williams testified that Mr. Mashburn was "another officer, opposite in color" who was allowed to work an eight hour shift, but was unable to adequately explain *why* Mr. Mashburn's schedule was adjusted, a key element in determining if Mr. Williams and Mr. Mashburn were similarly situated. (Doc. 102, Exhibit W). Furthermore, simply stating that Mr. Mashburn was "another officer" is insufficient to show that Mr. Mashburn was in a substantially similar position to Mr. Williams prior to the hour adjustment.

The Eleventh Circuit has held that "[i]f a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Coar v. Pemco Aeroplex, Inc.*, 372 Fed. App'x 1, 3 (11th Cir. 2010) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004)). Here, Mr. Williams has shown no

18

other evidence of discrimination relating to any employment action that he might consider adverse. Therefore, the court will GRANT Defendants' motion for summary judgment as to Count II.

### iv.      Count III: Retaliation Under the ADA Against ADOC

Mr. Williams's third count alleges retaliation under the ADA. Specifically, Mr. Williams claims that on November 24, 2010, Defendant Davenport was approved to terminate Mr. Williams in retaliation for his November 2010 EEOC charge and that Defendant Marsh retaliated against Mr. Williams by "provid[ing] false information; alter[ing] an investigation or incident report, and or intentionally omit[ting] fact pertinent to the inquiry in a drafted memorandum prepared by Defendant Davenport." (Doc. 37, ¶¶ 26-27). Defendants argue that Mr. Williams fails to establish the second and third elements of his prima facie case because the only adverse employment action he suffered was suspension and because no causal relationship exists between the suspension and the statutorily protected expression.

To establish a prima facie case of retaliation under the ADA, a plaintiff must show: "(1) he engaged in a statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the adverse action and his protected expression." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001).

Defendants concede the first element, that Mr. Williams engaged in protected activity; therefore, the court looks first at whether Mr. Williams suffered an adverse employment action. "An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." *Lucas v. W.W. Grainger, Inc.* 257 F.3d 1249, 1261 (11th Cir. 2001). Interpreting this standard, courts have held that mere threats of termination are not sufficient to constitute an adverse employment action. *See Mistretta v. Volusia County Dept. of Corrections*,

19

61 F. Supp. 2d 1255, 1260 (M.D. Fla 1999) (citing *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998)) (holding that plaintiff's FMLA retaliation claim failed because "[v]erbal reprimands and threats of termination do not constitute adverse employment actions"). Furthermore, courts have also found that negative reports or poor performance evaluations alone are not adverse employment actions. *See Lucas*, 257 F.3d at 1261 ("Negative performance evaluations, standing alone, do not constitute adverse employment action sufficient to satisfy the second element of a prima facie case of retaliation under the ADA.").

In this case, the November 2010 "approved termination" amounts to no more than a threat of termination at most, because Mr. Williams continued working for ADOC for another 10 months, at which point he resigned. No "termination" ever actually occurred. Such a threat had no tangible effect on Mr. Williams's employment; therefore, it is not an adverse employment action. The memorandum prepared by Defendant Davenport with the input of Defendant Marsh does not constitute an adverse employment action in itself and neither do any negative reports or evaluations made by Defendant Marsh; but the suspension that resulted from this report *does* qualify as an adverse employment action. The memorandum from Defendant Davenport reflects that Mr. Williams waived his right to a hearing and accepted a three-day suspension without pay. (Doc. 36, Exhibit Y).

Because the suspension satisfies the second element of adverse employment action in the prima facie case for retaliation under the ADA, the court must evaluate the third element—causation. The Eleventh Circuit has construed the causal link element broadly, holding that "a plaintiff merely has to prove that the protected activity and the [adverse] action are not

completely unrelated." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).[2] To satisfy the causation element, at a minimum a plaintiff must provide "sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322 (11th Cir. 1999).

Mr. Williams claims that he filed his first EEOC charge in November 2010, although he has not submitted a copy of that particular charge. Defendants, however, have submitted a copy of Mr. Williams's November 3, 2010 grievance, which states: "I have submitted papers to the U. S. Equal Employment Opportunity Commission in this matter (see attachment) because Warden Davenport is in violation of the Americans With Disabilities of (ADA) [sic] and the Rehabilitation Act of 1973 . . . ." (Doc. 101, Exhibit L). This internal grievance is sufficient in itself to be "statutorily protected expression." Because Defendants do not actually dispute the protected expression element of the prima facie case, the court will consider the November 3, 2010 submission of the internal grievance—which also notified ADOC of Mr. Williams's EEOC charge—as the protected expression for the purposes of determining causation.

Defendant Davenport issued the Notice of Recommendation for Suspension on November 5, 2010 (doc. 37, Exhibit Y), two days after Mr. Williams made his internal grievance on November 3, 2010. The two-day span between these two events sufficiently shows temporal proximity, but Mr. Williams must also show that the decision maker in his suspension was aware of the November 3rd

---

[2] The Eleventh Circuit assesses ADA retaliation claims under the same framework employed for retaliation claims arising under Title VII. *Stewart v. Happy Harman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).

grievance.

Defendants claim that Commissioner Allen was the decision maker in Mr. Williams's suspension (doc. 101, at 28); Mr. Williams simply produces no evidence at all as to who made the decision regarding the suspension, so the court considers it undisputed. Furthermore, Mr. Williams has not submitted any evidence to show who knew about his November 3, 2010 grievance. Regardless who made the suspension decision, Mr. Williams has not established that his complaints had even made it to his intended recipients[3] at the time the decision was made. As such, Mr. Williams has failed to establish a prima facie case of retaliation. However, even assuming that Commissioner Allen knew of Mr. Williams's complaint when he approved the notice for suspension, Mr. Williams' claim still falls short.

Even if Mr. Williams had made a prima facie case of retaliation, the November 5, 2010 Recommendation for Suspension provided a non-discriminatory reason for Mr. Williams's suspension—failing to report for work when he had a zero leave balance; Mr. Williams has failed to show that this reason was pretextual. *See E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002) (after a plaintiff establishes a prima facie case, if the employer produces evidence of a legitimate, non-discriminatory reason for the action, the plaintiff must then "show that the proffered reason really is a pretext for unlawful discrimination"). Mr. Williams does not offer any evidence to refute the reason stated for his suspension. He does not deny that he failed to report to work or theat he had exhausted his leave. Alternatively, he failed to present a genuine issue of material fact that the reason given for his suspension was pretextual.

---

[3] In fact, the grievance does not even state who its intended recipients *were*, but merely notes that William Northcutt was Mr. Williams's supervisor.

Mr. Williams has failed to offer any evidence of a causal link between his protected expression and the adverse employment actions at issue. Therefore, Defendant's motion is due to be GRANTED as to Count III.

> **v.     Counts IV: Disability Discrimination Under § 1983**

Mr. Williams's fourth count alleges disability discrimination under § 1983. Mr. Williams incorporates the exact same facts that he referenced in Count I—his ADA claim for disability discrimination—and states that "[s]aid actions of Defendant's were taken with malice or reckless indifference to the federally-protected and Constitutional rights under equal protection clause of the Fourteenth Amendment and due process clause of the Fifth Amendment." (Doc. 37, ¶ 51).

Section 1983 provides a remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws," and a § 1983 claim must show an underlying violation of the Constitution or of federal law. 42 U.S.C. § 1983; *see also Monroe v. Pape*, 365 U.S. 167, 171 (1961). Mr. Williams's complaint explicitly references the constitutional rights to equal protection and due process, but could also be interpreted as attempting to plead an underlying violation of the ADA.

To the extent Count IV relies on an underlying ADA violation, it cannot be maintained. The Supreme Court has held that federal statutes creating specific enforcement regimes evidence Congress's intent to foreclose § 1983 as a general remedy. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981) ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983."); *see also City of Ranch Palos Verdes, Cal. v. Abrams*, 544 U.S. 113 (2005).

Consistent with this reasoning, the Eleventh Circuit has held that "a plaintiff may not maintain a section 1983 action in lieu of–or in addition to–a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act and the ADA." *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1531 (1997). The Court explained that "[t]o permit a plaintiff to sue both under the substantive statutes that set forth detailed administrative avenues of redress as well as section 1983 would be duplicative at best; in effect, such a holding would provide the plaintiff with two bites at precisely the same apple." *Id*. As such, Mr. Williams cannot maintain § 1983 claims where the underlying violation of federal law is based on the ADA.

Mr. Williams also, however, bases Count IV on the Equal Protection Clause and the Due Process Clause. He does not allege any facts to support a due process claim; therefore, he cannot maintain that claim. As to the equal protection claim, another district court facing a similar issue noted that while "*Holbrook* did not decide whether a plaintiff alleging disability discrimination may simultaneously proceed under section 1983 for constitutional claims relating to the same discrimination," "[o]ther courts examining this question have concluded that the ADA . . . provide[s] the exclusive remedy for constitutional claims relating to the types of discrimination prohibited by the acts." *McNa v. Communications Inter-Local Agency*, 551 F. Supp. 2d 1343, 1348-49 (M.D. Fla. 2008) (citing *Holbrook*, 112 F.3d at 1531; *Vicenty-Martell v. Estado Libre Asociado De Puerto Rico*, 48 F. Supp. 2d 81, 90-91 (D.P.R. 1999)).

The court in *McNa* ultimately decided, however, that it did not have to resolve this question that is still open in the Eleventh Circuit, but could instead rule that the plaintiff's claim would fail even if it were permitted because she did not plead facts sufficient to support a violation of the

24

equal protection clause. *Id*. at 1349. Specifically, the court found that the plaintiff had not established that defendants lacked a rational basis for the alleged discrimination. *Id*.

This court will follow the example of the court in *McNa* and leave it to the Eleventh Circuit to decide whether the remedial scheme of the ADA precludes a § 1983 action based on the Equal Protection Clause for disability discrimination. Like Ms. McNa, Mr. Williams has not pled any facts or offered any evidence to show that even *if* the Defendants discriminated against him on the basis of his disability, they did not have a rational basis for doing so. *See Tennessee v. Lane*, 541 U.S. 509, 540 (2004) ("the Equal Protection Clause permits a State to classify on the basis of disability so long as it has a rational basis for doing so"). As such, Count IV fails in its entirety and the court will GRANT Defendants' motion for summary judgment.

### vi.   Count V: Race Discrimination Under § 1983

In Count V of his complaint, Mr. Williams alleges racial discrimination under § 1983, incorporating the same factual allegations as he incorporated in Count II for racial discrimination under Title VII. The relationship between Title VII and § 1983 differs from the relationship between the ADA and § 1983; "[i]t is well established that plaintiff[s] may assert claims under § 1983 to recover for race discrimination in employment premised upon a violation of the Equal Protection Clause of the Fourteenth Amendment." *Crutch v. Lawrence County Bd. of Educ.*, No. 3:12-cv-0827-PWG, 2012 WL 3042238, at *8 (N.D. Ala. 2012) (citing *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)). In *Crawford v. Carroll*, the Eleventh Circuit outlined the elements of a prima facie case for racial discrimination—the same ones this court already discussed in analyzing Count II—noting that "[t]hese elements also apply to a claim of race discrimination under § 1983 because the analysis of disparate treatment claims under § 1983 is identical to the analysis

under Title VII where the facts on which the claims rely are the same." 529 F.3d 961, 970 (11th Cir. 2008).

In this case, the facts on which Mr. Williams relies in Count II are exactly the same as in Count IV; in both counts, Mr. Williams incorporates ¶¶ 20-30 of his complaint to form the factual basis of the claim. As such, the analysis of the prima facie case already discussed for Count II applies to Count IV as well. Section 1983 does not limit race discrimination claims to the employer defendant, as does Title VII; therefore, Mr. Williams can maintain claims against Defendants Davenport, Weary, Marsh, Simmons, and Northcutt. However, the analysis engaged in by the court for Count II of Mr. Williams's complaint is equally applicable to the claims against the individual Defendants as it is against the Alabama Department of Corrections. As previously discussed, Mr. Williams fails to meet his prima facie case in his claim against each of them. Therefore, the court will GRANT Defendants' motion for summary judgment as to Count V.

### vii.    Count VI: Retaliation Under § 1983

Mr. William's sixth count alleges retaliation under § 1983. He incorporates the same facts referenced in his Count III claim for ADA retaliation, making clear that Count VI is based on Mr. William's claim of retaliation for his disability discrimination complaints. As discussed for Count IV, to the extent the claim is based on an underlying violation of the ADA, it cannot be maintained. *See Holbrook*, 112 F.3d at 1531.

Mr. Williams also references the Due Process Clause and the Equal Protection Clause, but does not allege any facts to support an underlying due process violation. As to his equal protection claim, the Eleventh Circuit has held that retaliation claims do not implicate the Equal Protection Clause. *See Watkins v. Bowden*, 105 F.3d 1344, 1354-55 (11th Cir. 1997) ("A pure or generic

retaliation claim, however, simply does not implicate the Equal Protection Clause."); *Ratliff v. DeKalb County, Ga.*, 62 F.3d 338, 341 (11th Cir. 1995) ("no established right exists under the equal protection clause to be free from retaliation"). As such, Count VI also fails.

In addition to lacking a legal basis for his § 1983 retaliation claim, Mr. Williams also lacks a factual basis for the claim. As already discussed for Count III, Mr. Williams does not submit any evidence that the decision-makers who implemented his suspension were aware of his grievance. He also failed to raise a genuine issue of material fact that the reason given for his suspension was a pretext for retaliation. Therefore, the court finds that Defendants' motion for summary judgment is due to be GRANTED as to Count VI.

## IV.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Because the court has already noted its intent to grant summary judgment to the Defendants as to all claims except the failure to accommodate claim in Count I, the same reasons support denial of Mr. Williams's arguments for summary judgment in *his* favor on these claims. The court needs to briefly address Mr. Williams's motion for summary judgment as to the failure to accommodate claim.

The law imposes a much higher standard on Mr. Williams when he is attempting to show that he is entitled to summary judgment in his favor, rather than merely attempting to defeat the Defendant's motion for summary judgment. He cannot simply show a genuine issue of material fact, but to prevail must show *no* genuine issue of material fact as to *all* elements of the cause of action *and* that he is entitled to judgment as a matter of law.

For purposes of this motion, ADOC is the non-movant; therefore, the court must look at the facts in the light most favorable to ADOC, *not* Mr. Williams. The key piece of evidence that

sustained Mr. Williams's failure to accommodate claim against ADOC's motion was the November 12, 2010 memorandum from Warden Davenport to Mr. Williams, responding to his accommodation request and claim of disability. (Doc. 37, Exhibit K). This memorandum was attached to and incorporated in to Mr. Williams's Second Amended Complaint. (Doc. 37, ¶ 18). The Defendants' answer specifically denied the paragraph of the complaint incorporating this exhibit. (Doc. 68, ¶ 5). Furthermore, Defendants did not include the memorandum—or any other facts or evidence supporting the claim that Mr. Williams was regarded as disabled and requested an accommodation—with their response or cross motion. Therefore, because the undisputed facts viewed in the light most favorable to *ADOC* do not establish all of the elements of Mr. Williams's failure to accommodate claim, summary judgment is due to be DENIED as to that claim. The court will DENY Mr. Williams's motion for summary judgment in its entirety.

## V.    CONCLUSION

For the reasons discussed above, the court will DENY the Plaintiff's motion for summary judgment in its entirety. The court will GRANT the Defendants' cross motion for summary judgment IN PART, and ENTER SUMMARY JUDGMENT as to the disparate treatment claim in Count I, as well as Counts II, III, IV, V, and VI. The court will DENY Defendants' cross motion IN PART as to the failure to accommodate claim in Count I. This one claim will proceed to trial.

DONE and ORDERED this 18th day of February, 2014.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE